UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

JANE DOE,                                   )
                                            )
          Plaintiff,                        )
                                            )
     vs.                                    )          Case No. 2:19 CV 25 CDP
                                            )
MICHELLE CHAPMAN,                           )
                                            )
          Defendant.                        )

## MEMORANDUM AND ORDER

At the time this complaint was filed, plaintiff was a pregnant minor who was seeking to obtain an abortion using Missouri's alternative authorization procedure set out in Mo. Rev. Stat. § 188.028[1] instead of obtaining the consent of her parents. Plaintiff alleges that defendant, the Circuit Clerk of Randolph County (where plaintiff sought to obtain alternative authorization for her abortion), refused to allow her to petition the court under the statute without first providing notice to her parents, in violation of her Fourteenth Amendment right to obtain an abortion without parental consent. Defendant admits that she told plaintiff her parents would be notified if she filed a bypass application, but claims that she was acting at the direction of the presiding judge and that her actions did not run afoul of

---

[1] The statute permits a pregnant minor to apply to the juvenile courts for either the right to self-consent to abortion or consent by the court to obtain an abortion.

Missouri or federal law.  Plaintiff seeks damages against defendant in her

individual capacity under 42 U.S.C. § 1983.[2]

Defendant now moves for dismissal of plaintiff's claim for damages on the

grounds that she enjoys either quasi-judicial or qualified immunity for her actions.

Alternatively, defendant argues that she is entitled to summary judgment because

plaintiff cannot show "that an official policy or custom existed for a judicial bypass

hearing in Randolph County."  Plaintiff also moves for summary judgment on the

issue of liability, contending that she is entitled to judgment as a matter of law that

defendant violated her constitutional rights.

Missouri's judicial bypass statute does not require prehearing notification of

the parents of minors seeking to obtain judicial authorization to obtain an abortion

and so defendant's statements to plaintiff were not in accord with the Missouri

statute.  However, if defendant's statements that such notice would be given were

made at the express direction of the judge who would hear the application, then

defendant would be shielded from liability under the doctrine of quasi-judicial

immunity.  Whether this is the case, however, is a disputed issue of material fact

that precludes either the dismissal of plaintiff's claims or the entry of summary

---

[2] To the extent plaintiff's second amended complaint restates claims or seeks relief that the Court has previously dismissed, these claims remain dismissed in accordance with the Court's prior orders of November 12, 2019 (dismissing claims for prospective injunctive and declaratory relief as moot) and June 18, 2020 (dismissing plaintiff's official capacity claim and affirming that plaintiff's claims for prospective injunctive and declaratory relief remain dismissed as moot). (Docs. 42, 80).

judgment in plaintiff's favor on the issue of liability.  Defendant is not qualifiedly immune from suit, because the law in this circuit is clearly established that defendant may not require that prehearing notification be given to the parents of a minor seeking to utilize Missouri's judicial bypass procedure, particularly where the statute itself embodies no such requirement.  Finally, because the United States Supreme Court has squarely rejected defendant's "policy or custom" argument, she is not entitled to judgment as a matter of law on that ground.  For the reasons that follow, this case will be set for trial.

### Standards Governing Motions to Dismiss and for Summary Judgment

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable" *Twombly*, 550 U.S. at 556, and reviews the complaint to

determine whether its allegations show that the pleader is entitled to relief.  *Id.* at

555-56.  The principle that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  *Iqbal*, 556 U.S. at

678-79.  Although legal conclusions can provide the framework for a complaint,

they must be supported by factual allegations.  *Id.* at 679.

Summary judgment is appropriate if, after viewing the facts and all

reasonable inferences in the light most favorable to the nonmoving party, the

record "shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Once a party moving for summary judgment has made a sufficient showing, the

burden rests with the non-moving party to set forth specific facts, by affidavit or

other evidence, showing that a genuine issue of material fact exists."  *Nat'l Bank of

Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

<u>Background Facts</u>[3]

In December of 2018, plaintiff was a pregnant minor who wanted to get an

abortion without the consent of her parents using Missouri's alternative

authorization procedure.   The statute, Mo. Rev. Stat. § 188.028, permits a

---

[3] Although this is a bench-tried case, the Court states these facts for purposes of deciding the pending motions only, and neither party may rely upon this Memorandum and Order to establish any fact at trial.

4

pregnant minor to apply to the juvenile courts for either the right to self-consent to

abortion or consent by the court to obtain an abortion.  It reads in relevant part as

follows:

   **188.028. Minors, abortion requirements and procedures** – 1. No person
shall knowingly perform an abortion upon a pregnant woman under the age of
eighteen years unless:
   (1) The attending physician has secured the informed written consent of the
minor and one parent or guardian; or . . .
   (3) The minor has been given the right to self-consent to the abortion by
court order pursuant to subsection 2 of this section, and the attending physician has
received the informed written consent of the minor; or
   (4) The minor has been granted consent to the abortion by court order, and
the court has given its informed written consent in accordance with subsection 2 of
this section, and the minor is having the abortion willingly, in compliance with
subsection 3 of this section.
   2. The right of a minor to self-consent to an abortion under subdivision (3)
of subsection 1 of this section or court consent under subdivision (4) of subsection
1 of this section may be granted by a court pursuant to the following procedures:
   (1) The minor or next friend shall make an application to the juvenile court
which shall assist the minor or next friend in preparing the petition and notices
required pursuant to this section. The minor or the next friend of the minor shall
thereafter file a petition setting forth the initials of the minor; the age of the minor;
the names and addresses of each parent, guardian, or, if the minor's parents are
deceased and no guardian has been appointed, any other person standing in loco
parentis of the minor; that the minor has been fully informed of the risks and
consequences of the abortion; that the minor is of sound mind and has sufficient
intellectual capacity to consent to the abortion; that, if the court does not grant the
minor majority rights for the purpose of consent to the abortion, the court should
find that the abortion is in the best interest of the minor and give judicial consent to
the abortion; that the court should appoint a guardian ad litem of the child; and if
the minor does not have private counsel, that the court should appoint counsel. The
petition shall be signed by the minor or the next friend:
   (2) A hearing on the merits of the petition, to be held on the record, shall be
held as soon as possible within five days of the filing of the petition.  If any party is
unable to afford counsel, the court shall appoint counsel at least twenty-four hours
before the time of the hearing.  At the hearing, the court shall hear evidence
relating to the emotional development, maturity, intellect and understanding of the

minor; the nature, possible consequences, and alternatives to the abortion; and any other evidence that the court may find useful in determining whether the minor should be granted majority rights for the purpose of consenting to the abortion or whether the abortion is in the best interests of the minor;

(3) In the decree, the court shall for good cause:

(a) Grant the petition for majority rights for the purpose of consenting to the abortion; or

(b) Find the abortion to be in the best interests of the minor and give judicial consent to the abortion, setting forth the grounds for so finding; or

(c) Deny the petition, setting forth the grounds on which the petition is denied;

(4) If the petition is allowed, the informed consent of the minor, pursuant to a grant of majority rights, or the judicial consent, shall bar an action by the parents of guardian of the minor on the grounds of battery of the minor by those performing the abortion . . . .

(5) An appeal from an order issued under the provisions of this section may be taken to the court of appeals of this state by the minor or by a parent or guardian of the minor.  The notice of intent to appeal shall be given within twenty-four hours from the date of issuance of the order.  The record on appeal shall be completed and the appeal be perfected within five days from the filing of notice to appeal.  Because time may be of the essence regarding the performance of the abortion, the supreme court of this state shall, by court rule provide for expedited appellate review of cases appealed under this section.

Mo. Rev. Stat. § 188.028(1) and (2).  As plaintiff was living in Randolph County,

she went to the Randolph County Courthouse in early December of 2018 to request

alternative authorization to seek an abortion.  She was instructed to return at a later

time so the clerk's office could research what she was requesting, since they had

"never heard of that before."  During her second visit, she was told that she could

not file a petition without notifying a parent.  She was later called by defendant

6

who told her that she had the paperwork[4] for plaintiff to fill out but that "our Judge requires that the parents will be notified of the hearing on this."   (Doc. 91-7).  In her deposition, defendant testified that, because "this being something that was new . . . I will always get the advice of my judge that handles this type of case, what he's going to require for it, how he wants us to handle and then I will work from there." (Doc. 91-2 at 27-28).  Defendant testified that Judge James Cooksey (who as the presiding judge for the juvenile court would rule on any judicial bypass application filed by plaintiff) told her that he would require plaintiff to send notification to her parents if she filed a bypass application.  (Doc. 91-2 at 28). Judge Cooksey, however, testified at his deposition that he had no recollection of ever telling defendant "not to accept a petition to obtain judicial consent to obtain an abortion without parental consent unless she sent notices to the natural born parents of the minor" and that is "not how he would usually operate." (Doc. 91-13 at 22).

Plaintiff went to the courthouse a third time in mid-January of 2019 to request an opportunity to file for judicial bypass and was again told that she could

---

[4] This "paperwork" was a form petition created by an attorney for the Randolph County juvenile officer and has a space to provide the name, birthdate, social security number and address of the natural father and natural mother of the minor. (Doc. 91-4).  The accompanying sample pre-hearing Order for the judge to sign (which bears Judge James Cooksey's name on the blank signature block as the judge of the juvenile court) has a blank to add a hearing date and orders the circuit clerk "to issue summons and notices to the minor and the minor's natural parents." (Doc. 91-5).

not file a petition without a parent being notified.  Consequently, plaintiff went to Illinois where she sought and was granted (without parental notification) judicial authorization to obtain an abortion.  During the pendency of this case, plaintiff obtained an abortion and turned eighteen years of age.

## Discussion

A.    Quasi-Judicial Immunity

Defendant first renews her motion to dismiss this case on immunity grounds. She contends that, as a circuit clerk, she has quasi-judicial immunity from suit. "Absolute quasi-judicial immunity derives from absolute judicial immunity." *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997).  "A judge's absolute immunity extends to public officials for acts they are specifically required to do under court order or at a judge's direction."  *Id.*  "Clerks are absolutely immune only for acts that may be seen as discretionary, or for acts taken at the direction of a judge or according to court rule."  *Geitz v. Overall*, 62 Fed. App'x 744, 746 (8th Cir. 2003) (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993)).

Plaintiff argues extensively that defendant's actions in issuing prehearing notices should be considered ministerial, rather than discretionary, in nature, but this argument does not foreclose the application of quasi-judicial immunity because defendant asserts that her actions were undertaken at the express direction of the presiding judge, which is a separate category entitling defendant to

immunity.  *See Geitz*, 62 Fed. App'x at 746; *Smith v. Finch*, No. 1:18CV118 SPM, 2018 WL 6621528, at *4–6 (E.D. Mo. Dec. 18, 2018) (clerk who issued warrant at the express direction of the judge was entitled to quasi-judicial immunity even though the warrant was mistakenly issued for the wrong person).

Plaintiff also points to Judge Cooksey's testimony that he "lacked jurisdiction" to "issue orders" in cases that have not been filed and that he was not plaintiff's supervisor as evidence that defendant could not assert quasi-judicial immunity in this case, but these factors are not dispositive of the issue.  *Geitz* does not require a written order or pending case for immunity to attach, regardless of Judge Cooksey's personal opinion of his jurisdiction or whether he was defendant's supervisor.

The evidence is undisputed that Judge Cooksey was the juvenile judge who would be assigned to hear any judicial bypass application that might be filed. Defendant would be entitled to quasi-judicial immunity only if her statements to plaintiff about prehearing notification were made because Judge Cooksey told her that is what he required.   If Judge Cooksey told defendant to do this, he was performing a judicial function; if defendant's statements were made to carry out Judge Cookey's requirement, she too would be performing a judicial function. Whatever the precise contours of the judicial immunity doctrine may be, they encompass this situation, where the Missouri bypass statute requires "the court" (of

which both defendant and Judge Cooksey are undoubtedly members)[5] to assist

plaintiff "in preparing the petition and notices required pursuant to this section."

*See* Mo. Rev. Stat. § 188.028(1).

If Judge Cooksey told defendant to do this, even though he was mistaken[6] in

his instructions to issue prehearing notice to the parents and defendant was

mistaken in relaying those instructions to plaintiff, that mistake would not strip

defendant of quasi-judicial immunity in this case.  Despite any mistaken direction

to defendant, Judge Cooksey himself would be protected from suit by judicial

immunity in this situation, *see Denoyer v. Dobberpuhl*, 208 F.3d 217 (8th Cir.

2000), and the Eighth Circuit Court of Appeals has found that an individual who

makes a mistake or acts improperly in carrying out a judge's order does not lose

the protections of quasi-judicial immunity either, noting that "[a]bsolute quasi-

judicial immunity would afford only illusory protection if it were lost the moment

---

[5] Plaintiff cannot argue otherwise, as the statute goes on to require "the Court" (i.e., Judge Cooksey) to hold the hearing and either grant or deny plaintiff's application.

[6] As discussed below, such an instruction would undoubtedly be mistaken because the Missouri statute does not require prehearing notification of parents, and in fact was specifically amended to remove such a requirement after the Eighth Circuit Court of Appeals decided that such a requirement would violate a minor's constitutional rights.  *See Planned Parenthood Ass'n of Kansas City, Missouri, Inc. v. Ashcroft*, 655 F.2d 848 (8th Cir. 1981).  That the statute grants a minor's parents a right to appeal any decision on a judicial bypass application does not, despite defendant's arguments to the contrary, vest the court with authority to send prehearing notification to a minor's parents.  The constitutionality of any post-hearing parental notification is not before this Court, nor is the facial constitutionality of Missouri's statute at issue.  This case is limited to whether defendant violated plaintiff's constitutional rights by requiring prehearing notification of plaintiff's parents when plaintiff sought to obtain judicial authorization for an abortion.

an officer acted improperly." *Martin*, 127 F.3d 720 at 722 (holding that an officer

carrying out a judge's order to remove a witness from the courtroom was entitled

to absolute quasi-judicial immunity because he was obeying a judicial order that

was "related to the judicial function"; finding that the officer did not lose the

protections of absolute quasi-judicial immunity when he used excessive force in

carrying out the order); s*ee also Smith*, 2018 WL 6621528, at *4–6 (clerk who

issued warrant at the express direction of the judge was entitled to quasi-judicial

immunity even though the warrant was mistakenly issued for the wrong person).

Therefore, the key issue on defendant's assertion of quasi-judicial immunity

in this case is whether Judge Cooksey did, in fact, tell defendant that he would

require plaintiff's parents to be notified before he would hold a hearing on any

judicial bypass application that might be filed by plaintiff.   As there is a genuine

dispute as to whether Judge Cooksey gave defendant this express directive, the

Court cannot determine as a matter of law whether defendant is entitled to assert

quasi-judicial immunity at this time.  In support of her position, defendant relies

solely on her own testimony.[7]  Judge Cooksey testified that he had no recollection

of telling defendant "not to accept a petition to obtain judicial consent to obtain an

abortion without parental consent unless she sent notices to the natural born

---

[7] Although defendant represented early in this case that Chanda Bankhead was also a party to the conversation and heard Judge Cooksey tell her this, neither party has submitted any testimony from Ms. Bankhead.

parents of the minor" and that would not be how he "usually operates."  Viewing

this testimony in the light most favorable to plaintiff and drawing all reasonable

inferences in her favor, the Court concludes that genuine disputes of material fact

remain on this material issue.  This is an issue that must be resolved by a trial, at

which time the Court can weigh the evidence and assess the credibility of

witnesses.[8]   Defendant's renewed motion to dismiss on the basis of quasi-judicial

immunity is denied.  Because defendant may ultimately be entitled to absolute

quasi-judicial immunity, plaintiff's motion for summary judgment as to liability

must also be denied.

B.     Qualified Immunity

Defendant also asserts that she is qualifiedly immune from liability in this

case.  "Qualified immunity attaches when an official's conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal

quotation marks and citation omitted).  "Because the focus is on whether the

[official] had fair notice that her conduct was unlawful, reasonableness is judged

against the backdrop of the law at the time of the conduct."  *Brosseau v. Haugen*,

543 U.S. 194, 198 (2004) (alteration added).  "'A clearly established right is one

---

[8] The Court reminds defendant that it is her burden to demonstrate that she is entitled to quasi-judicial immunity.

that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)) (internal quotation omitted).  "We do not 'define clearly established law at a high level of generality.'"  *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). "Rather, we look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Dillard v. O'Kelley*, 961 F.3d 1048, 1053 (8th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, defendant argues that plaintiff does not have a clearly established right to seek a judicial bypass without prehearing notification of her parents because the United States Supreme Court has not yet squarely decided the issue.  In making this argument, defendant characterizes Missouri's statute at issue as both a "parental notification" statute and a "parental consent" statute.  While the statute may be a "parental consent law," the Court disagrees with defendant's characterization of Mo. Rev. Stat. § 188.028 as a "parental notification" statute to the extent her argument is construed as one that the statute requires *prehearing*

notification to the parents.[9]  The statute contains no language requiring prehearing

parental notification, and the legislative history demonstrates that such a

requirement was removed from the prior version of the statute, which required that

"copies of the petition and a notice of the date, time, and place of the hearing [] be

personally served upon each parent . . . ."  (Doc. 110 Ex. 16 at 3).  This provision

was deleted by the Missouri legislature in 1986.  *See* Missouri House Bill 1596

(Doc. 110 Ex. 15).  Thus, defendant is wrong that Missouri's judicial bypass

procedure statute requires that notice of the petition and hearing be sent to the

parents of a minor seeking to utilize the alternative authorization procedure set out

in the statute.[10]

Defendant's next argument is that, in the absence of controlling Supreme

Court precedent, there is no "clearly established law" that she can be accused of

violating.  In support of this argument, she cites the Supreme Court's decision in

*Kisela*, in which the Court assumed, without deciding, that circuit precedent

amounts to "clearly established law" for qualified immunity purposes.  138 S. Ct.

at 1153.  The Court disagrees with defendant's characterization of the Supreme

---

[9] The Court is not required to decide any issue regarding any post-hearing notifications the statute may require with respect to the appeal rights granted to a minor's parents, and therefore it does not reach or address that issue.

[10] Defendant's attempt to justify her request for the names and identifying information of plaintiff's parents in the application because she was required to notify the parents of their *appeal* rights is unavailing given her own admission that she told plaintiff "our Judge requires that the parents will be notified of the hearing on this."

Court's decision in *Kisela* as "doubting" whether circuit precedent creates clearly established law.  Assuming without deciding is not the same as doubting.  In a recent decision, the Eighth Circuit, examining *Kisela*, considered the parameters of "clearly established law" in the context of qualified immunity where a "Supreme Court decision raises the threshold question whether the right defendants are alleged to have violated even exists."  *Dillard*, 961 F.3d at 1053.  That is not the case here.  In a concurring opinion, Circuit Judge Steven M. Colloton made clear that "[t]his case leaves undisturbed our precedent that a prior holding of the Eighth Circuit is sufficient to recognize a clearly established right."  *Id.* at 1056 (citing *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020); cf. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019)).  Unless and until the Supreme Court (or the Eighth Circuit en banc) dictates otherwise, this Court is bound to follow the Eighth Circuit's pronouncement that its own prior decisions are sufficient to constitute clearly established law for qualified immunity purposes.  Thus, if defendant's actions would violate plaintiff's clearly established rights as dictated by the Eighth Circuit, she is not entitled to qualified immunity in this case.

The "right of privacy, . . . founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, . . . is broad enough to encompass a woman's decision whether or not to terminate her pregnancy."  *Roe v. Wade*, 410 U.S. 113, 153 (1973).  "An undue burden exists, and therefore a

15

provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Planned Parenthood of Se. Pa. v. Casey*, 112 S. Ct. at 2821 (1992).

A parental-consent requirement is not an undue burden for minors seeking abortions so long as the minor has the opportunity to avoid the requirement by demonstrating that she is mature or that an abortion is in her best interests. *Bellotti v. Baird*, 443 U.S. 622, 651 (1979) (plurality). *See also City of Akron v. Akron Center for Reproductive Health* (*Akron I* ), 462 U.S. 416, 440 (1983) (following *Bellotti* by invalidating a consent statute that made "a blanket determination that all minors under the age of 15 are too immature to make [an abortion] decision or that an abortion never may be in the minor's best interests without parental approval"). Under *Bellotti*, consent statutes must have an anonymous bypass procedure that allows a minor to show either that she has the maturity to make her own abortion decision or, even if she is immature, that the desired abortion would be in her best interests. *Bellotti*, 443 U.S. at 643–44; *Akron II*, 497 U.S. at 511–13. Without that opportunity, the consent requirement unduly burdens the minor's right to choose. *Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1458–60 (8th Cir. 1995).

As for parental notice requirements, the Supreme Court has established that the State may require parental notice for immature minors who cannot show that an

abortion would be in their best interests.  *H.L. v. Matheson*, 450 U.S. 398, 409

(1981); *id.* at 414  (Powell, J., concurring).  Although the Supreme Court has yet to

decide whether a mature or "best interest" minor is unduly burdened when a State

requires parental notification to her parents before she may obtain an abortion, in

*Planned Parenthood Ass'n of Kansas City, Missouri, Inc. v. Ashcroft*, 655 F.2d 848

(8th Cir. 1981), the Eighth Circuit struck down the very prehearing notification

requirement in Missouri's prior version of Mo. Rev. Stat. § 188.028 that defendant

sought to impose against plaintiff in this case:

> We are thus faced with the question left open in *Matheson*: whether it is
> constitutionally permissible to require mature or "best interests" minors to
> notify their parents prior to a court hearing in which they seek judicial
> consent for an abortion. We have no need to analyze this problem at length,
> as the justices of the Supreme Court have already explored it. As noted, in
> *Bellotti II*, Justice Powell's opinion advances persuasive reasons for
> concluding that parental notice is unduly burdensome in cases involving
> mature or "best interests" minors. 443 U.S. at 642-48.  In *H. L. v. Matheson*,
> Justices Powell and Stewart concurred in the decision, but insisted that "a
> State may not validly require notice to parents in all cases, without providing
> an independent decisionmaker to whom a pregnant minor can have recourse
> if she believes that she is mature enough to make the abortion decision
> independently or that notification otherwise would not be in her best
> interests."  101 S. Ct. at 1176-77.  Justices Marshall, Brennan and Blackmun
> concluded that the Utah statute, which is very similar to the Missouri statute,
> is unconstitutional on its face because the burdens it imposes exceed any
> identifiable state interests.  *Id.* at 1184-94.  **The analysis in these opinions
> strongly suggests that subsection 188.028.2(2) is unconstitutional
> because it requires mature or "best interests" minors to give notice to
> their parents prior to the court hearing.  We so hold.**  *See also Wynn v.
> Carey*, 582 F.2d 1375, 1388 (7th Cir. 1978).

*Ashcroft*, 655 F.2d at 859 (8th Cir. 1981) (emphasis added).  Although this case was partially reversed on other grounds by the Supreme Court, the Court noted that Missouri had not appealed the holding that the notice requirement was unconstitutional.  *See* 462 U.S. 476, 491 n.17 (1983).  The Eighth Circuit has thus squarely held that it is unconstitutional to require plaintiff to give her parents notice of her application for judicial bypass under Mo. Rev. Stat. § 188.028 prior to the hearing.  *Ashcroft*, 655 F.2d at 859.  By telling plaintiff that "our Judge requires that the parents will be notified of the hearing on this," defendant did exactly what the Eighth Circuit said she could not do.  In so doing, defendant violated clearly established law.  *See also Miller*, 63 F.3d at 1454 ("[T]he State may not impose a parental-notice requirement without also providing a confidential, expeditious mechanism by which mature and best interest minors can avoid it.  In short, parental-notice provisions, like parental-consent provisions, are unconstitutional without a *Bellotti*-type bypass") (internal quotation marks omitted).  She is not entitled to qualified immunity, and her renewed motion to dismiss on this ground is denied.

C.     Unconstitutional Policy or Custom

       Finally, defendant moves for summary judgment, arguing that plaintiff must show an unconstitutional policy or custom for liability to attach.  This argument is meritless.  "On the merits, to establish personal liability in a § 1983 action, it is

enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 105 S. Ct. 3099, 3105 (U.S. 1985); *see Butterfield v. Young*, 833 Fed. App'x 38, 40 (8th Cir. 2021) (quoting *Clay v. Conlee*, 815 F.2d 1164, 1169–70 (8th Cir. 1987) ("To establish personal liability in a § 1983 action, the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right.")).  Plaintiff brings this suit against defendant in her individual capacity and has sufficiently alleged that defendant deprived her of her constitutional rights, resulting in damages.  She is entitled to a trial.

## Conclusion

The Court previously vacated the referral to mediation after the parties asked to defer mediation until they received a ruling on their dispositive motions.  They now have that ruling.  Given that neither party is entitled to judgment as a matter of law, the Court will once again refer this case to mediation in an attempt to resolve this dispute without further judicial proceedings.  The Court will give the parties 90 days to conduct mediation.  If they do not settle the case, they should file a joint memorandum by no later than June 25, 2021 setting out mutually agreeable dates after September 1, 2021 for the bench trial of this matter.

Accordingly,

19

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [86] is denied.

**IT IS FURTHER ORDERED** that plaintiff's second motion for partial summary judgment [90] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of March, 2021.